UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

JANICE FAYE BRANSCUM,     )
     )
     Plaintiff,     )     No. 6:17-CV-345-HAI
     )
v.     )
     )     MEMORANDUM OPINION & ORDER
NANCY A. BERRYHILL, *Acting*     )
*Commissioner of Social Security*,     )
     )
     Defendant.     )
     )

*** *** *** ***

On October 31, 2014, Plaintiff Janice Faye Branscum filed a protective application for supplemental security income. D.E. 13-1 at 66, 100.[1] She dated the beginning of her disability period to October 1, 2004. *Id*. at 214. Branscum claimed in her initial application that she is disabled due to diabetes, kidney disease, peripheral neuropathy, and back problems. *Id*. at 100. The Social Security Administration denied Branscum's claims initially in December 2014 and upon reconsideration on May 21, 2015. *Id*. at 66.

Meanwhile, Branscum was diagnosed in September 2015 with carpal tunnel syndrome. D.E. 13-1 at 542, 557-58. She had surgery on her left hand on December 2, 2015, followed by surgery on her right hand on June 1, 2016. *Id*. at 704, 760.

On July 22, 2016, upon Branscum's request, Administrative Law Judge ("ALJ") Dennis Hanson conducted an administrative hearing. *Id*. at 83-98. The ALJ heard testimony from Branscum and impartial vocational expert ("VE") William Ellis. *Id*. at 66. Additional evidence was submitted after the hearing, which the ALJ considered. *Id*.

---

[1] The Court will refer to the page numbers generated by the Social Security Administration, printed on the bottom of each page of the administrative record.

Branscum was 42 years old when she filed her application. D.E. 13-1. at 73. She has "a limited education" (*id.*), having attended school only through the eighth grade (*id.* at 87). Branscum has no past relevant work experience. *Id* at 73. The ALJ found that Branscum had certain severe impairments (*id.* at 68), but that she "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)," with certain limitations (*id.* at 70). Because there were adequate available jobs she could perform, the ALJ found Branscum was "not disabled." *Id.* at 74.

Branscum now brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying her application for disability insurance benefits. D.E. 2. She argues that the ALJ ascribed insufficient weight to the opinion of a treating physician and that the ALJ's residual functional capacity is not based on substantial evidence. D.E. 15-1. Specifically, she argues that the ALJ erroneously underrepresented the effect of diabetes on her feet and the severity of her hand limitations as a result of carpal tunnel syndrome and hand surgeries. D.E. 15. Both parties consented to the referral of this matter to a magistrate judge. D.E. 18. This matter was thus referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 19. The Court, having reviewed the record and for the reasons stated herein, **GRANTS** Plaintiff's motion for summary judgment (D.E. 15), **DENIES** the Commissioner's motion for summary judgment (D.E. 17), and **REMANDS** this matter for further proceedings.

# I.  The ALJ's Findings

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[2]  The ALJ followed these procedures in this case.  *See* D.E. 13-1 at 67-74.

At the first step, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  In this case, the ALJ found that Branscum was "not engaged in substantial gainful activity" since the application date.  D.E. 13-1 at 68.  The ALJ thus proceeded to the next step.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit the physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  The ALJ found that Branscum did suffer several significant impairments: diabetes mellitus, peripheral neuropathy, sprains and strains, carpal tunnel syndrome, status post bilateral release surgery, Dupuytren's contracture, anxiety, and depression.  D.E. 13-1 at 68.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is disabled.  20 C.F.R. § 404.1520(d).  The ALJ found Branscum failed to meet this standard.  D.E. 13-1 at 68-69.

First, at this step, the ALJ considered Branscum's issues with her hands.  The ALJ considered whether her conditions equal Listing 1.02 (Major Dysfunction of Joint(s) (Due to

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520.  Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry . . ., the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile.

*Id.* at 474 (internal citations omitted).

Any Cause)). D.E. 13-1 at 68. This listing requires an individual to be unable to perform fine and gross movements effectively. Although Branscum had carpal tunnel surgeries on both hands, the ALJ found "little to no evidence" of a "substantial loss of function in her arms." *Id*. at 69. "She has responded well to surgery, for example." *Id*. Branscum now takes issue with the ALJ's assessment of her hands; however she does so in the context of the residual functional capacity, not at step three of the disability analysis. D.E. 15-1 at 1, 10.

Next, the ALJ considered whether Branscum's diabetes could equal one of the listed impairments. D.E. 13-1 at 69. Listing 9.00 encompasses "Endocrine Disorders" and focuses on the affected bodily system. The ALJ found that Branscum's symptoms were insufficiently severe to meet the listing. *Id*. For example, there was "no evidence of diabetic nephropathy or amputation of an extremity," no record of chronic hyperglycemia, and no evidence of severe diabetes-based complications, such as peripheral neurovascular disease. *Id*.

The ALJ then discussed whether Branscum could meet Listing 11.14 (Peripheral Neuropathies) in regard to her diabetes symptoms. The ALJ found "little evidence of the required disorganization of motor function, as the claimant is able to sustain movement, gait, and station." D.E. 13-1 at 69.

Branscum argues the ALJ understated the severity of her diabetes-related foot issues. D.E. 15-1 at 1, 6-10. However, Branscum does not identify any specific impairment listing as being equivalent to her impairments. Instead, she appears to take issue with the ALJ's residual functional capacity in relation to her feet. *See id.*

The ALJ also found no sufficiently severe mental health issues. D.E. 13-1 at 69-70. Branscum does not challenge this finding.

If, as here, a claimant is found to be not disabled at step three, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from the impairments. 20 C.F.R. § 404.1520(e). The ALJ determined that Branscum has the RFC to perform light work as defined in 20 C.F.R. § 416.976(b),

> except that she can only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. The claimant can only frequently balance, and frequently handle, finger, or feel bilaterally. She can never climb ladders, ropes, or scaffolds. She can never be exposed to unprotected heights or dangerous moving machinery. The claimant can understand and remember work place instructions, and can complete work place tasks in a normal amount of time with regular breaks every two hours. She can frequently interact with supervisors, coworkers, and the public; and can adapt to occasional work place changes.

D.E. 13-1 at 70.

Branscum argues that the ALJ's RFC calculation underestimates her actual disability concerning her hands and, presumably, her feet. D.E. 15-1.

At the fourth step, if a claimant's impairments do not prevent her from doing past relevant work (given the ALJ's residual functional capacity), she is not disabled. 20 C.F.R. § 404.1520(f). Here, the ALJ found that Branscum "has no past relevant work." D.E. 13-1 at 72.

At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g). The ALJ found Branscum was not disabled at this step. D.E. 13-1 at 73-74. The ALJ explained that the vocational expert testified that Branscum could "perform the requirements of representative light and unskilled occupations with a Specific Vocational Preparation (SVP) level of two," such as ticket taker, rental clerk, and mail clerk—jobs with significant numbers of openings in Kentucky. *Id*. at 73. Branscum was therefore "not disabled" as defined by the regulations. *Id*. at 74.

Accordingly, on August 30, 2016, the ALJ issued a decision finding that Branscum was not disabled and was therefore ineligible for supplemental security income. D.E. 13-1 at 74. The Appeals Council declined to review the ALJ's decision on October 25, 2017. *Id*. at 1-4. She filed this action in federal court on December 27, 2017. D.E. 2.

## II.  General Legal Standards

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing

court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

### III. The ALJ's Weighing of Podiatrist Dr. Jensen-Stanley's Opinion

Branscum argues that the ALJ "failed to properly apply the treating physician standard when weighing treating podiatrist Dr. Jensen-Stanley's opinion." D.E. 15-1 at 1.

Under the regulations as they existed in 2016, "if the opinion of the treating physician as to the nature and severity of a claimant's conditions is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record,' then it will be accorded controlling weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The ALJ must provide "good reasons" for discounting a treating physician's opinion, and the reasons must be "sufficiently specific" so any reviewers will know the ALJ's reasoning for ascribing a particular weight to the opinion. *Id.*

In her brief, Branscum describes consultations and treatments with Dr. Jensen-Stanley that occurred on April 22, 2015, August 19, 2015, October 21, 2015, January 13, 2016, and May 26, 2016. D.E. 15-1 at 2-6. Dr. Jensen-Stanley filled out a two-page Physical Impairment Questionnaire about Branscum on July 5, 2016. D.E. 13-1 at 775-76. Branscum argues the ALJ gave this opinion insufficient weight. D.E. 15-1 at 6-10. Dr. Jensen-Stanley's questionnaire notes that Branscum has insulin-dependent diabetes and suffers "numbness to feet, painful nails." D.E. 13-1 at 775. According to the questionnaire, Branscum would not need extra break time to recline or lie down during a hypothetical 8-hour workday. *Id.* She can walk one to two city

blocks without rest or significant pain. *Id*. She can stand or walk for 15 minutes out of every hour. *Id*. She can sit for four hours during the work day and stand or walk for one hour during the work day. *Id*. She can frequently lift objects weighing less than ten pounds, and occasionally lift ten- or twenty-pound objects. *Id*. at 776. Dr. Jensen-Stanley reported that Branscum is not a malingerer. *Id*.

The ALJ made the following statement regarding this questionnaire:

> This [treating source statement] limited the claimant to sitting four hours a day, and standing and walking to one hour. It limited the claimant to lifting or carrying only less than ten pounds frequently, and ten to twenty pounds occasionally. The undersigned accords this opinion partial weight. The modest treatment records do not support such exertional limitations, but the record does reflect that the claimant can lift or carry at the light level.

D.E. 13-1 at 72 (citation omitted).

According to Branscum, "The ALJ accepted Dr. Jensen-Stanley's lifting limitations but rejected the walking/standing limitations, stating the 'record[s] do not support such exertional limitations . . . .'" D.E. 15-1 at 7. Branscum faults this "brief, conclusory" explanation as being "unsupported by substantial evidence" and inconsistent with the treating-physician rule. *Id*. The pivotal question is whether the ALJ improperly discounted Dr. Jensen-Stanley's opinion that Branscum could sit for only four hours during the work day and stand or walk for only one hour during the work day.

Section 416.927 of the regulatory code describes how the Commission is to evaluate medical opinion evidence.[3] "Generally," treating sources are given "more weight" than non-treating sources. 20 C.F.R. § 416.927(c)(2). The regulation informs claimants, "If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

---

[3] These regulations apply to Branscum's claim because it was filed before March 27, 2017. The newer regulations, codified at 20 C.F.R. § 416.920c, no longer incorporate a "controlling weight" standard. *See id* § 416.920c(a).

not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id*. However, there may be "good reasons" for declining to ascribe "controlling weight." *Id*. Such reasons include how well the opinion is supported by relevant evidence (*id*. § 416.927(c)(3)) and how consistent the opinion is with "the record as a whole" (*id*. § 416.927(c)(4)). The "substantial evidence" standard has already been discussed.

Here, the ALJ provided the following explanation for ascribing only partial weight to the relevant opinion: "The modest treatment records do not support [Dr. Jensen-Stanley's] exertional limitations[.]" D.E. 13-1 at 72.

Prior to making this statement, the ALJ noted other evidence which suggested that Branscum could sit more than four hours a day and stand more than one hour a day. First, the ALJ noted Branscum's testimony that her feet and legs are "affected by neuropathy" and that "her feet swell if they are not elevated." D.E. 13-1 at 71. However, the ALJ found that the reported intensity of her claimed impairments were "not entirely consistent with the medical evidence" in the record. *Id*. Turning to Dr. Jensen-Stanley's own treatment records, the ALJ noted that Branscum showed "no gait abnormalities" in April 2015 and August 2015. *Id*. Further, the diabetes that caused the foot issues was "relatively under control with conservative treatment." *Id*. The ALJ also relied on the opinion of a state agency medical consultant:

> P. Saranga, M.D., opined that the claimant could perform light work; could frequently perform postural activities, but could only occasionally climb ladders; and would need to avoid exposure to hazards. The undersigned accords this opinion preponderant weight. It is consistent with the longitudinal medical evidence of record that shows a variety of testing but only modest findings, [including] only standard conservative treatment for diabetes mellitus.

*Id*. at 72 (citation omitted).

The ALJ's opinion thus contains the ALJ's reasons for declining to ascribe controlling weight to Dr. Jensen-Stanley's opinion. According to the ALJ, the record as a whole shows that

Branscum's diabetes is relatively under control with conservative treatment, she has exhibited no gait abnormalities, and an examining physician opined that she could perform light work, including frequently standing. D.E. 13-1 at 71-72. The ALJ cites to the relevant exhibits. *Id.*

The standard of § 416.927 has been met. The ALJ found "supportability" and "consistency" issues with the treating podiatrist' opinion. *See* 20 C.F.R. § 416.927(c)(3)-(4). It was not necessary for the ALJ to recapitulate all the evidence when he stated that Dr. Jensen-Stanley's opinion garnered "partial weight." D.E. 13-1 at 72. The ALJ stated that the "modest treatment records" did not support the standing/walking limitations. The ALJ summarized those records in the preceding narrative, and any reviewer can clearly track the ALJ's analysis. The ALJ's reasoning is sufficiently specific, good reasons are provided, and the reasons qualify as "substantial evidence." The ALJ's decision was within the zone of reasonable choices based on the evidence, and a reviewing court may not disturb the decision. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). However, because the Court is remanding this case, the ALJ is free to revisit this decision in future proceedings.

### IV. The ALJ's Analysis Related to Branscum's Hands

A summary of this issue is as follows. Branscum was diagnosed with carpal tunnel syndrome after her claim was denied initially and upon reconsideration. She testified about her hands at the July 22, 2016 evidentiary hearing and submitted some relevant medical records, which the ALJ considered. *See* D.E. 13-1 at 71. Critically, the ALJ did not possess any medical *opinion* evidence concerning whether Branscum's hand-related issues were the equivalent of a listed impairment under step three. Nor did the ALJ possess any *opinion* evidence concerning how her hand-related issues impacted her residual functional capacity. The ALJ relied entirely on Branscum's hearing testimony (which he largely rejected) and the raw medical records.

## A. Relevant Evidence

The record contains the following medical evidence concerning Branscum's issues with her hands. At a checkup on September 21, 2015, Branscum informed a nurse practitioner that she "has a lot of numbness and tingling in both of her hands and arms[.]" D.E. 13-1 at 534. An examination indicated "bilateral positive Tinel's signs," and she was assessed as suffering carpal tunnel syndrome and referred to Dr. Steven DeMunbrun. *Id*. at 535.

On September 23, 2015, Branscum was evaluated by Dr. Steven DeMunbrun. D.E. 13-1 at 542. She complained to him of "pain, weakness, burning, numbness and tingling in the arms and hands, bilaterally"—symptoms that had gotten progressively worse for over five years. *Id*. She told Dr. DeMunbrun that the symptoms were disturbing her sleep and "causing difficulty performing routine activities of daily living." *Id*. "She frequently drops things," and the symptoms "are equally severe on the right and left." *Id*. He diagnosed "Bilateral sensory/motor carpal tunnel syndrome." *Id*.

On November 13, 2015, Dr. Robert Supinski noted that Branscum's EMGs showed "sensorimotor carpal tunnel syndrome bilaterally." D.E. 13-1 at 557. He found that Branscum "has a positive Tinel's over the carpal canal bilaterally" and "has Heberden's and Bouchard's nodes bilaterally in all of her fingers." *Id*. She was diagnosed with carpal tunnel syndrome in both hands and "trigger finger of the left small finger." *Id*. at 558.

Dr. Supinski performed surgery on Branscum's left hand on December 2, 2015. D.E. 13-1 at 704, 800.

At a post-surgery appointment on December 16, 2015, Branscum reported that "her small finger is still very sore." D.E. 13-1 at 555. Her incisions were "well-healed" with "no redness or

drainage." *Id*. Branscum was told to contact Dr. Supinski in two weeks if she was still unable to fully extend her finger. *Id*. at 556.

On May 11, 2016, a nurse gave Branscum a pre-surgery evaluation of her right hand. D.E. 13-1 at 586, 702. Branscum had "a positive Tinel's over the carpal canal bilaterally," "tenderness over the flexor tendon sheath of the right small finger," and "Herberden's and Bouchard's nodes bilaterally in all of her fingers." *Id*.[4]

Branscum's right hand carpal tunnel surgery occurred on June 1, 2016. D.E. 13-1 at 760, 899. At a June 16 checkup, Dr. Supinski found that her incisions were well-healed, but she had soreness at the base of her palm "as expected." *Id*. at 760. Branscum still had numbness at the tips of her thumb, index finger, and middle finger, but she had "good sensation at the bases of her fingers." *Id*.

At a July 19, 2016 checkup, Dr. Supinski noted Branscum reported "weakness in both hands." D.E. 13-1 at 903. She reported that "she has lost grip strength and she has difficulty even turning doors." *Id*. Concerning her left hand, which received surgery first, Branscum had "developed several nodules on her left hand." *Id*. She told Dr. Supinski that "the nodules on her left hand are somewhat sore when she grips." *Id*. Concerning her right hand, Branscum still had "some soreness" resulting from the surgery, though the incisions were well-healed. *Id*. at 904. She still lacked "full extension of the small finger of the right [hand]." *Id*. Despite the "nodules" on Branscum's left palm there were "no contractures of the fingers" noted and she had "good thenar [thumb] function bilaterally." *Id*. Dr. Supinski observed that Branscum's "left palm has several nodules present consistent with Dupuytren's disease," a gradually forming hand

---

[4] Bouchard's nodes and Herberden's nodes are symptoms of osteoarthritis of the hand: "Two types of bony bumps near your finger joints are common [symptoms of osteoarthritis of the hand]. Bouchard's nodes show up on the middle joint of a finger, and Heberden's nodes on the joint near your fingertip." WebMD: What Is Hand Osteoarthritis?, https://www.webmd.com/osteoarthritis/hand-osteoarthritis-degenerative-arthritis-of-the-hand#1.

deformity.[5]  *Id.*  The doctor's notes opined that Branscum "should regain her strength over time," and she was counseled "not to do anything with her Dupuytren's nodules until she develops contractures of her fingers" because her nodules could "return after excision."  *Id.*

At the July 22, 2016 hearing, the ALJ asked Branscum about her hands:

ALJ:  Then you've also had carpal tunnel surgery on both your hands at different times.  Can you tell me how you're doing with that?

Branscum:  Not very good.  My left hand has developed some knots and [they] do hurt when I grab or try to do anything with them.  My right hand still hurts really bad.  I'm not sure if it's going to heal right or not.

ALJ:  You've had the right more recently, so [you] don't know yet?

Branscum:  Yes.

D.E. 13-1 at 89-90.

Later, her attorney also broached the issue:

Mr. Reader:  [T]alking about your hands, do you have problems grasping?

Branscum:  Yes, I mean, just to open anything or a door or a can or like squeezing shampoo or anything, I mean just . . .

Mr. Reader:  Is it pain or weakness?

Branscum:  It's pain and weakness.  The pain's like really bad in the center of my hands and them like in the muscles and weakness, both.

Mr. Reader:  Can you do fine fingering things like doing buttons or picking up change off the table?

---

[5] According to WebMD, Dupytren's Contracture

is a hand deformity that usually develops over years.  The condition affects a layer of tissue that lies under the skin of your palm.  Knots of tissue form under the skin — eventually creating a thick cord that can pull one or more fingers into a bent position.

The affected fingers can't be straightened completely, which can complicate everyday activities such as placing your hands in your pockets, putting on gloves or shaking hands.

Mayo Clinic: Dupuytren's Contracture, https://www.mayoclinic.org/diseases-conditions/dupuytrens-contracture/symptoms-causes/syc-20371943.

> Branscum:  I can do the change, not like a whole lot, like a nice little bit, but not like a lot.
>
> . . . .
>
> Mr. Reader:  [D]o you have problems using your cell phone with your fingers?
>
> Branscum:  I do, sir.
>
> Mr. Reader:  What are the problems you have there?
>
> Branscum:  I can't hold my hand – my cell phone a certain way like everyone else, for a little while then I have to just set it down and look at it.
>
> Mr. Reader:  [I]f you have that much hand pain, how are you able to do chores at home?
>
> Branscum:  I just do very little and set down and not do much for a while and then do it again.

*Id*. at 92-93.  The ALJ then asked Branscum how she had developed carpal tunnel syndrome.  *Id*. at 96.  She responded, "I was told from my diabetes . . . because of the nerve damage." *Id*.

In summary, Branscum was diagnosed with carpal tunnel syndrome in both hands and had surgeries on both hands.  *See* D.E. 13-1 at 71.  Along with carpal tunnel, she was also developing osteoarthritis and Dupuytren's Contracture.  *Id*. at 557, 904.  Aside from "peripheral neuropathy, Branscum did not list her hand issues among her medical issues in her original application.  D.E. 13-1 at 238 (listing diabetes, kidney disease, peripheral neuropathy, and back problems).  And Branscum's hand issues were not addressed by the state agency medical consultant, who offered his opinions on May 15, 2015.  *Id*. at 112-24.  Rather, the carpal-tunnel diagnosis came in September 2015, and her first surgery was in December 2015.  *Id*. at 71.  To be clear, the only medical-provider *opinion* in the record comes from podiatrist Pamela Jensen Stanley (dated July 5, 2016), and it offers no opinion regarding Branscum's hands, fingers, and arms.  D.E. 13-1 at 776.

The ALJ's decision noted Branscum's testimony that she "has knots in her left hand," that "her right hand continues to hurt even after her carpal tunnel surgery," and that she "also testified about problems grasping with her hands, as well as numbness and pain in her hands[.]" D.E. 13-1 at 71. But the ALJ found her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. Concerning her left hand, the ALJ found that post-surgery records "show minimal complications without limitations that would restrict the claimant beyond the range of light work outlined above." *Id*. Concerning the right hand, the ALJ found "the relatively modest findings present in the record do not indicate that she is incapable of a range of light work." *Id*. This analysis by the ALJ appears to contain a negative credibility determination. However, the case at this juncture does not hinge on the credibility of Branscum's testimony.

## B. Defining the Issue

The issue boils down to this: in the absence of any medical *opinion* evidence, could the ALJ properly issue a decision based on "substantial evidence" concerning Branscum's hands at step three of the analysis regarding (1) equivalence to a listed impairment and (2) RFC?

Any error here would not be harmless. First, a contrary equivalence finding at step three would result in a finding that Branscum is disabled. At step three, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is disabled. 20 C.F.R. § 404.1520(d).

Second, as the hearing transcript makes clear, the VE's assessment at step five hinged on whether Branscum could handle, finger, and feel bilaterally "frequently" or "only occasionally"—a function of her RFC. First, the ALJ presented the VE with the RFC the ALJ

ended up adopting, including the hypothetical ability to "frequently handle, finger and feel bilaterally." D.E. 13-1 at 96-97. With this RFC, the VE testified that sufficient available jobs existed in the national economy for Branscum to perform. *Id*. at 97. The ALJ then presented a second hypothetical RFC:

> ALJ: For hypothetical 2, assume the same functional abilities as hypothetical 1, except the individual could only occasionally handle, finger and feel bilaterally. With these functional abilities, Mr. Ellis, are there jobs available in the national economy?

> Mr. Ellis: In my opinion, there is not, Your Honor.

*Id*. Therefore, if Brancum's RFC matches this hypothetical, she qualifies as disabled.

Here is how Branscum presents the issue. In describing Branscum's RFC, the ALJ's Decision found that she can "frequently handle, finger, or feel bilaterally." D.E. 13-1 at 70. Branscum argues the ALJ's finding is "not supported by a professional medical assessment of [her] limitations, nor supported by treatment notes within the record." D.E. 15-1 at 10. She states there was "significant evidence related to [her] carpal tunnel impairments and her troubles using her hands." *Id.* Yet "there is no medical opinion that provides a professional insight into Plaintiff's carpal tunnel symptoms and how they translate into functional limitations." *Id.* at 11. Therefore, "the RFC cannot possibly be supported by substantial evidence." *Id.*

Branscum does not raise the argument that the ALJ's equivalence analysis at step three concerning her carpal tunnel syndrome is not supported by substantial evidence. But the Court may raise this issue on its own. *See Choate v. Comm'r of Soc. Sec.*, No. 2:17-CV-10096, 2018 WL 1354471, at *8 (E.D. Mich. Feb. 24, 2018), *report and recommendation adopted*, 2018 WL 1326293 (E.D. Mich. Mar. 15, 2018). And it does so now.

## C. Caselaw on the Importance of Medical Opinion Evidence

The caselaw is somewhat divided on whether an ALJ can make a valid finding at step three or in the RFC analysis in the absence of a relevant medical *opinion* in the record. But the relevant authorities weigh strongly in favor of finding that he may not.

### i. *Deskin*

The seminal case in this Circuit concerning how the lack of a relevant medical opinion impacts an ALJ's findings is *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008). In *Deskin*, the reviewing Magistrate Judge concluded that the ALJ's RFC finding was not based on substantial evidence "because of the absence from the administrative record of a proper medical opinion as to [the claimant's] work-related limitations." *Id.* at 910. None of the claimant's treating physicians had provided a medical opinion that included a "statement about what she could still do based on the acceptable medical source's findings." *Id.* The only medical opinion in the record came from a state agency reviewing physician; it was issued in October 2003. *Id.* However, the record contained two years' worth of medical records that post-dated the state agency reviewing physician's opinion. *Id.* "Rather than ordering a consultative examination or having a medical expert testify at the hearing, the ALJ proceeded to decide the case based on his analysis of the medical records," without even discussing the reviewing physician's specific limitations. *Id.*

The *Deskin* Court defined the issue as whether an ALJ should decide a case "in the absence of a medical opinion of a treating physician, consulting examiner, or medical expert as to the claimant's functional capacity." *Deskin*, 605 F. Supp. 2d at 910-11. Although the claimant bears the burden of proof, the Agency bears the responsibility to develop the record. *Id.* at 911. This responsibility includes "the duty to make an effort to obtain from the treating

physician an opinion as to the claimant's ability to perform work-related activities." *Id.* (citing

*Day v. Shalala*, 23 F.3d 1052, 1061-62 (6th Cir. 1994)).

To make an RFC finding, the *Deskin* court held, it is "[c]ritical" that the ALJ obtain and

consider "residual capacity opinions offered by medical sources such as treating physicians,

consultative examining physicians, medical experts who testify at hearings before the ALJ, and

state agency physicians who reviewed the claimant's medical records." *Id.* at 911-12.

"In making the residual functional capacity finding," the *Deskin* court held, "**the ALJ**

**may not interpret raw medical data in functional terms**." *Deskin*, 605 F. Supp. 2d at 912

(emphasis added).

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical
> findings, and as a result **an ALJ's determination of RFC without a medical**
> **advisor's assessment is not supported by substantial evidence.** Where the
> medical findings in the record merely diagnose the claimant's exertional
> impairments and do not relate these diagnoses to specific residual functional
> capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the
> Commissioner may not] make the connection himself."

*Id.* (quoting *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998)) (emphasis added).  In

*Rohrberg*, the ALJ, in determining RFC, disbelieved both the claimant's testimony and "the bare

medical findings" in the claimant's doctors' reports.  *Id.*  The *Rohrberg* court found that, in the

absence of a medical opinion of RFC in the record, the ALJ's RFC determination was not based

on substantial evidence.  *Id.*

The *Deskin* court followed suit, but added this caveat:  "To be sure 'where the medical

evidence shows relatively little physical impairment, an ALJ permissibly can render a

commonsense judgment about functional capacity even without a physician's assessment.'"

*Deskin*, 605 F. Supp. 2d at 912 (quoting *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76

F.3d 15, 17 (1st Cir. 1996)).  An RFC opinion from a medical source "may not be necessary in

every case." *Id.* However, when a claimant has sufficiently placed her RFC at issue, an expert's

RFC evaluation "is ordinarily essential." *Id.* (quoting *Manso-Pizarro*, 76 F.3d at 17).

Accordingly, the *Deskin* court posited this "general rule:"

> where the transcript contains only diagnostic evidence and no opinion from a
> medical source about functional limitations (or only an outdated nonexamining
> agency opinion), to fulfill the responsibility to develop a complete record, the ALJ
> must recontact the treating source, order a consultative examination, or have a
> medical expert testify at the hearing. This responsibility can be satisfied without
> such opinion only in a limited number of cases where the medical evidence shows
> relatively little physical impairment and an ALJ can render a commonsense
> judgment about functional capacity.

*Deskin*, 605 F. Supp. 2d at 912 (quotation marks omitted).

### ii.  Decisions Post-*Deskin*

The *Deskin* decision was criticized by a judge of the same Court in *Henderson v. Comm'r*

*of Soc. Sec.*, No. 1:08-CV-2080, 2010 WL 750222 (N.D. Ohio Mar. 2, 2010), an opinion that

rejected a recommended disposition that relied on *Deskin*. The *Henderson* court stated that

*Deskin* "is not representative of the law established by the legislature, and interpreted by the

Sixth Circuit Court of Appeals" because the ALJ, "not a physician, is assigned the responsibility

of determining a claimant's RFC based on the evidence as a whole." *Id.* at *2. The *Henderson*

court noted, "The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected

medical opinion testimony and determined RFC based on objective medical evidence and non-

medical evidence." *Id.*

However, *Deskin* was not a case in which the ALJ rejected medical opinions. Rather,

there was no relevant medical opinion in the record concerning the claimant's most recent two

years of medical treatment.

The author of *Deskin* again faced a similar scenario in *Kizys* and reaffirmed his earlier

analysis. *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-CV-25, 2011 WL 5024866 (N.D. Ohio Oct. 21,

2011). As the *Kizys* court stated the issue: "This is a case in which the ALJ found that Kizys had multiple severe impairments and imposed an extremely restrictive residual functional capacity finding without the benefit of any medical source opinion as to work-related limitations whatsoever." *Id.* at *1. The court pointed out that, in *Henderson*, the record "contained at least three medical source opinions." *Id.* at *2. In contrast, the *Deskin* rule is "narrow" and "potentially applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Id.* Nevertheless, an ALJ "retains discretion to impose work-related limitations without a proper source opinion where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity." *Id.* (quotation marks omitted).

The *Kizys* court's description of *Deskin* is strikingly similar to the posture in this case: "In *Deskin,* the ALJ relied upon an early state agency residual functional capacity assessment that did not take into consideration a substantial body of medical evidence that came into the record after that assessment." *Kizys*, 2011 WL 5024866, at *2. As another court explained, "*Deskin* potentially applies in only two circumstances: (1) where an ALJ made an RFC determination based on *no* medical source opinion; or (2) where an ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence." *Raber v. Comm'r of Soc. Sec.*, No. 4:12-CV-97, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013) (applying *Deskin*, but affirming the ALJ).

Here, the only medical opinion is one that predates Branscum's diagnoses of carpal tunnel syndrome (and other hand issues) and two subsequent surgeries. Thus, the narrow *Deskin* rule applies. This is a case "where an ALJ made an RFC determination based on an outdated

source opinion that did not include consideration of a critical body of objective medical evidence." *Raber*, 2013 WL 1284312, at *15.

Other decisions and courts have followed the *Deskin* rule in cases like this one. For example, in *Davies*, the court remanded the case when the operative medical opinion did not take into account "additional objective medical tests performed later, which revealed that [the claimant's] condition had worsened." *Davies v. Comm'r of Soc. Sec.*, No. 1:10-CV-2012, 2012 WL 1068736, at *4 (N.D. Ohio Feb. 14, 2012), *report and recommendation adopted sub nom. Davies v. Astrue*, 2012 WL 1068732 (N.D. Ohio Mar. 29, 2012). The Court in *Woelk* found no need to remand in light of the *Deskin* rule, but remarked that "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Woelk v. Comm'r of Soc. Sec.*, No. 2:13-CV-12411, 2014 WL 2931404, at *7 (E.D. Mich. May 15, 2014) (quoting *Sparck v. Comm'r of Soc. Sec.,* 2012 WL 4009650, at *9 (E.D. Mich. Aug.23, 2012)), *report and recommendation adopted*, 2014 WL 2931411 (E.D. Mich. June 30, 2014). Courts have "stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Id.*; *see also Lindsey v. Comm'r of Soc. Sec.*, No. 2:12-CV-12585, 2013 WL 6095545, at *8 (E.D. Mich. Nov. 20, 2013) (remanding when the impairment was not minimal and there was no relevant medical opinion on RFC).

The *Deskin* rule has also been followed in this District. In *McGranahan*, District Judge Hood applied the rule that, "[a]s a practical matter, the ALJ is not qualified to assess the Plaintiff's RFC on the basis of bare medical findings, and an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *McGranahan*

*v. Colvin*, No. 0:14-CV-83-JMH, 2015 WL 5828098, at \*3 (E.D. Ky. Oct. 1, 2015) (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). In that case, the available medical opinion did not take into account a 2012 MRI that indicated "degenerative changes" had occurred in the claimant's spine. *Id.* The Court presumed that the ALJ crafted her RFC based on the raw medical records—something that "is not permitted." *Id.* Judge Hood concluded that a remand was "necessary to obtain a proper medical source opinion to support the ALJ's residual functional capacity finding, whatever it may be upon remand." *Id.* at \*4; *but see Blackburn v. Berryhill*, No. 5:18-CV-04-DLB, 2018 WL 4904947, at \*6 (E.D. Ky. Oct. 9, 2018) (citing but not applying *Deskin* based upon a finding of a sufficient record to support the ALJ's decision).

An order issued last year found "significant case law" in the Eastern District of Michigan "confirming the general principle that the ALJ must generally obtain a medical expert opinion when formulating the RFC unless the medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a commonsense judgment about functional capacity." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828-29 (E.D. Mich. 2017) (collecting cases). The *Gross* court found "a multitude of consistent, reported and unreported cases holding that it is in error for the ALJ to formulate an RFC without the benefit of *any opinion evidence* and an unreported, non-binding Sixth Circuit case which is somewhat at odds with this conclusion." *Id.* at 829.[6] The court ended up applying an analysis similar to *Deskin*. *Gross* was not a case "where the medial evidence shows relatively little physical impairment."

---

[6] The unpublished Sixth Circuit case is *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719 (6th Cir. 2013). *Rudd* does not address *Deskins* directly. The ALJ in *Rudd* rejected a medical opinion and fashioned an RFC based on what the appellate court found to be "substantial evidence, including objective medical evidence." *Id.* at 728. The appellate court's nonbinding analysis lacks detail and does not explain how substantial evidence to support an RFC could exist in the absence of a medical opinion.

*Id.* at 830. Absent a medical opinion on the claimant's RFC, the court remanded the case "to obtain a proper medical source opinion and for the redetermination of Plaintiff's RFC." *Id.*

Other recent court decisions have followed this general pattern. For example, in *VanWormer*, a remand was ordered when the ALJ "improperly made a finding as to Plaintiff's functional capacity based on an independent review of Plaintiff's raw medical data without an opinion from a treating or examining source, which is inconsistent with the practice of this Circuit." *VanWormer v. Comm'r of Soc. Sec.*, No. 4:16-CV-12978, 2017 WL 4230654, at *3 (E.D. Mich. Sept. 25, 2017).

The *Deskin* rule applies not only to RFC findings, but also to equivalence at step three. *Smith v. Comm'r of Soc. Sec.*, No. 4:13-CV-11610, 2014 WL 4605826, at *9 (E.D. Mich. Sept. 15, 2014). In *Smith*, the record contained no opinion evidence as to whether the claimant's symptoms were equivalent to a listed condition. *Id.* The court remanded so the ALJ could obtain a qualified medical opinion on the issue of equivalence at step three. *Id.* "[T]he lack of any medical opinion on the issue of equivalence" is "an error requiring remand." *Id.* (quoting *Pizzo v. Comm'r of Soc. Sec.*, No. 2:13-CV-11344, 2014 WL 1030845, at *19 (E.D. Mich. Mar. 14, 2014)).

The same conclusion was reached in *Choate v. Comm'r of Soc. Sec.*, No. 2:17-CV-10096, 2018 WL 1354471 (E.D. Mich. Feb. 24, 2018), *report and recommendation adopted*, 2018 WL 1326293 (E.D. Mich. Mar. 15, 2018). Although the claimant raised no step-three error, the court took issue with "the absence of any medical opinion in the record" regarding equivalence. *Id.* at 8. For the ALJ to conduct the equivalence analysis without any medical opinion for guidance was "an obvious and significant error" that the court could raise *sua sponte*. *Id.* The Commissioner, the court held, "is required to have a medical opinion to support the equivalency

analysis." *Id*. at *9. And the error was not harmless in that case—"it cannot be said that the record is so lacking in medical findings that a finding of equivalence is implausible." *Id*. at *11. "In fashioning the RFC without the assistance of a medical opinion on equivalence of plaintiff's physical impairments and their combination, the ALJ carved out several limiting functions based on his own interpretation of the medical records." *Id*. at 11. The case was remanded for the ALJ to obtain updated medical opinions as well as perhaps updated VE testimony "in particular, regarding any handling and fingering limitations." *Id*. The similarities to this case are evident.

### D. Application to this Case

Based on the caselaw described above, this case must be remanded because the ALJ made findings at step three concerning equivalence and RFC without the benefit of any medical opinion about the impact of Branscum's issues with her hands.

"Unquestionably, the claimant bears the burden of proof as to the existence and severity of the limitations caused by her impairments and a functional capacity opinion from a medical source may not be necessary in every case." *Blackburn v. Berryhill*, No. 5:18-CV-04-DLB, 2018 WL 4904947, at *6 (E.D. Ky. Oct. 9, 2018) (alterations and quotation marks omitted) (quoting *Deskin*, 605 F. Supp. 2d at 911). When "the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." *Deskin*, 605 F. Supp. 2d at 912. However, when a claimant has sufficiently placed her RFC at issue, an expert's RFC evaluation "is ordinarily essential." *Id*. (quoting *Manso-Pizarro*, 76 F.3d at 17).

The medical evidence in this case fairly calls into question whether Branscum's issues with her hands are equivalent to a listed impairment and whether she can "frequently" or "only

occasionally" handle things as part of her job.  This is not a case of relatively little impairment that can be decided on a commonsense judgment.

Branscum was diagnosed with carpal tunnel syndrome after informing healthcare providers she had been suffering from numbness, tingling, pain, weakness, and burning in both hands that was getting progressively worse.  D.E. 13-1 at 534-35, 542.  In addition to carpal tunnel, she also had nodes in all her fingers and could not extend her left small finger.  *Id*. at 557-58, 586.  She had surgery on both hands.  On July 19, 2016, a month after the second carpal tunnel surgery, Branscum told her surgeon that both hands were still weak, and she had lost strength, including having difficulty turning doorknobs.  *Id*. at 903.  Several nodules had developed in her left hand, which Branscum said felt sore when she grips.  *Id*.  She was unable to fully extend her right little finger.  *Id*. at 904.  The surgeon did note that Brancum had good thumb function and expected her to "regain her strength over time."  *Id*. at 904.  However, the surgeon also diagnosed Branscum with Dupuytren's Contracture, a condition whereby the hand slowly deforms over time.  *Id*.  The medical records also indicate the existence of "Heberden's and Bouchard's nodes bilaterally in all of her fingers."  *Id*. at 557.  As noted, these nodes are symptoms of osteoarthritis of the hands.

Thus, Branscum was not only diagnosed with carpal tunnel syndrome in both hands and treated with surgery.  She also had signs of osteoarthritis and degenerative Dupuytren's Contracture.  Under the caselaw discussed above, a physician's opinion was necessary for the ALJ to properly evaluate whether this combination of hand conditions was equivalent to a listed impairment or warranted a more restrictive RFC.  This is a case where the ALJ "made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence."  *Raber v. Comm'r of Soc. Sec.*, No. 4:12-CV-97, 2013 WL

1284312, at *15 (N.D. Ohio Mar. 27, 2013). "[T]he ALJ is not qualified to assess the Plaintiff's RFC on the basis of bare medical findings, and an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *McGranahan v. Colvin*, No. 0:14-CV-83-JMH, 2015 WL 5828098, at *3 (E.D. Ky. Oct. 1, 2015) (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). And this is not a case in which "the medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a commonsense judgment about functional capacity." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828-29 (E.D. Mich. 2017). This case fits the narrow *Deskin* rule, which the Court applies to both the RFC findings and the equivalence determination. *Choate v. Comm'r of Soc. Sec.*, No. 2:17-CV-10096, 2018 WL 1354471, at *8 (E.D. Mich. Feb. 24, 2018), *report and recommendation adopted*, 2018 WL 1326293 (E.D. Mich. Mar. 15, 2018); *Smith v. Comm'r of Soc. Sec.*, No. 4:13-CV-11610, 2014 WL 4605826, at *9 (E.D. Mich. Sept. 15, 2014). A remand is required to reassess Branscum's equivalence and RFC in relation to her hand impairments. The Commissioner will be free to evaluate any other issues at that time, as well.

## V. CONCLUSION

Fort the reasons explained above, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff's Motion for Judgment on the Pleadings (D.E. 15) is **GRANTED.**

(2) The Commissioner's Motion for Summary Judgment (D.E. 17) is **DENIED.**

(3) This matter is **REMANDED** to the Commissioner (pursuant to sentence four of 42 U.S.C. § 405(g)) for reconsideration of the equivalence and residual functional capacity findings with the assistance of a medical opinion.

This the 6th day of February, 2019.



Signed By:

*Hanly A. Ingram*

United States Magistrate Judge